IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WALTER EARL WILLIAMS, #131113,    )
                                  )
          Plaintiff,              )
                                  )
v.                                )        CASE NO. 2:13-CV-512-WHA
                                  )                 (WO)
                                  )
NURSE PHELPS,                     )
                                  )
          Defendant.              )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is before the court on a complaint and amendment thereto filed by Walter Earl Williams ("Williams"), a state inmate incarcerated at the Staton Correctional Facility.  In these pleadings, Williams alleges that the defendant, Nurse Stacey Phelps, denied him access to necessary medical care on April 12, 2013, and July 15, 2013, respectively.  The defendant filed a special report, supplemental special reports and relevant evidentiary materials, including affidavits and certified copies of medical records, addressing the claims presented against her by Williams.  In these filings, the defendant denies she acted with deliberate indifference to Williams's medical needs.

Williams filed responses, a rebuttal and a statement to the defendant's reports.  On March 23, 2016, the court entered an order advising Williams that unless "**sufficient legal cause**" is shown within ten days of entry of this order "**why such action should not be undertaken**, the court may at any time [after expiration of the time for his filing a response

to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law."   *Doc. No. 21* at 2.   Pursuant to this order, the court deems it appropriate to treat the defendant's reports as a motion for summary judgment. Thus, this case is now pending on the defendant's motion for summary judgment.

Upon consideration of the defendant's motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's responses/rebuttal to the reports, the court concludes that summary judgment is due to be granted in favor of the defendant.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"   *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]   The

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Comp., Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (the moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendant has met her evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff.  Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits,

relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison [medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is

4

merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw.*

*Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Liberty Lobby*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing *Liberty Lobby*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Williams has failed to

demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant.

### III.  DISCUSSION

### A.  Relevant Facts

On April 9, 2013, Williams completed a medical request form seeking "blood work for cholesterol."  *Exh. B to the Defendant's Special Report - Doc. No. 9*-2 at 51. The following day, a nurse reviewed this request and scheduled Williams a sick call appointment on April 11, 2013, for evaluation by medical personnel.  *Exh. A to the Defendant's Supplemental Special Report - Doc. No. 17-1* at 7; *Exh. B to Plaintiff's Rebuttal - Doc. No. 16-2*.  The Daily Appointment Schedule listing those inmates given medical appointments for April 11, 2013, was compiled and distributed on April 10, 2013. *Id*.  That schedule clearly references the sick call appointment scheduled for Williams on April 11, 2013.  *Id*.  Williams was a "no show" for that appointment.  *Exh. B to the Defendant's Special Report - Doc. No. 9*-2 at 51. Williams, however, appeared at the Staton Health Care Unit on April 12, 2013, without an appointment.  On this particular day, only those inmates with previously assigned appointments for evaluation by the medical provider were permitted in the health care unit.  *Exh. A to the Defendant's Supplemental Special Report - Doc. No. 17-1* at 4.  Nurse Phelps advised Williams that because he lacked the requisite appointment he could not be evaluated at that time and ordered Williams to return to his dorm.  *Id*.

8

On July 10, 2013, Williams prepared a medical request form seeking a new pair of glasses and cream for his athlete's foot. *Exh. B to the Defendant's Special Report - Doc. No. 9*-2 at 44. After review of that request on July 12, 2013, Nurse Phelps scheduled Williams a sick call appointment for evaluation by medical personnel on July 15, 2013. *Id*. While conducting sick call at Staton on this date, Nurse Phelps stepped outside.

> At this time, there was [one] inmate left to see for sick call. The inmate, Walter Williams, was told he would be seen in just a moment. Walter Williams became upset . . . and left sick call. When arriving back at SHCU [Staton Health Care Unit], Captain Copeland and Walter Williams were at the health care unit. Captain Copeland asked if I would see inmate [Williams and] I stated that I would. Draper had a seg inmate that was [in the SHCU] and [for security purposes] inmate Walter Williams was going to have to be placed in the cage until [the] seg inmate left. Inmate [Williams] got upset again and left SHCU.

*Id*. at 45. The medical records further establish that Williams routinely failed to show for sick call appointments, consistently missed chronic care clinics for evaluation of his hypertension and dyslipidemia (an abnormal amount of lipids or fats in the blood commonly associated with high cholesterol), and was non-compliant with the chronic care treatment prescribed, including the medication regimen, for his these conditions.

## B. Claims for Relief

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must, at a minimum, show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th

Cir.1986).[2]   Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice - negligence by a physician [or nurse] - is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

---

[2]Williams was a convicted inmate incarcerated at the Staton Correctional Facility during the period of time relevant to this complaint.  Thus, this case is not affected by the decision of the United States Supreme Court in *Kingsley v. Hendrickson*, --- U.S. ---, ---, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (holding that "objectively reasonable" standard of review is applicable to pretrial detainee's excessive force claim brought under the Fourteenth Amendment).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show:  (1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that the response made by [the defendants] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Goebert v. Lee Cty.*, 510 F.3d 1312, 1325 (11th Cir. 2007) (quoting  *Hill*, 40 F.3d at 1187, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  In addition, "to show the required subjective intent . . ., a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate

things 'awareness of facts from which the inference could be drawn that a substantial risk

of serious harm exists [] and . . . draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258

(internal citations omitted).  Thus, deliberate indifference occurs only when a defendant

"knows of and disregards an excessive risk to inmate health or safety; the [defendant] must

both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837;

*Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual

knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk

to serious condition to warrant finding of deliberate indifference).  Furthermore, "an

official's failure to alleviate a significant risk that he should have perceived but did not,

while no cause for commendation, cannot under our cases be condemned as the infliction

of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate
> indifference, . . . the Supreme Court has . . . emphasized that not 'every claim
> by a prisoner that he has not received adequate medical treatment states a
> violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at
> 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth
> amendment only when it is 'so grossly incompetent, inadequate, or excessive
> as to shock the conscience or to be intolerable to fundamental fairness.'
> *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or
> malpractice do not rise to the level of constitutional violations.  *See Estelle,*
> 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a
> constitutional violation merely because the victim is a prisoner.'); *Mandel*,
> 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient'
> to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere
> medical malpractice does not constitute deliberate indifference).  Nor does a
> simple difference in medical opinion between the prison's medical staff and
> the inmate as to the latter's diagnosis or course of treatment support a claim
> of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing
> *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference, the plaintiff must demonstrate a serious medical need and then must establish that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir .2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir.1990)).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing the inmate has a life-

threatening or urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186-87, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994). "In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill*, 40 F.3d at 1186–87. A medical need is considered serious when delay in treatment results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth Cty. Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

Williams complains that Nurse Phelps violated his constitutional right to medical treatment when he appeared at the Staton Health Care Unit on April 12, 2013, without an appointment, seeking blood work regarding his cholesterol level and when he reported to sick call and later the health care unit on July 15, 2013, regarding his request for new glasses and anti-fungal cream for his foot. Williams, however, has presented no medical evidence establishing any detrimental effect suffered due to the actions of the defendant.

Initially, Nurse Phelps asserts that Williams fails to identify any serious medical need he suffered on the dates at issue for which he did not receive treatment. *Defendant's Special Report - Doc. No.* 9 at 7-8. Moreover, she adamantly denies acting with deliberate indifference to a serious medical need suffered by Williams. In support of this assertion, defendant Phelps maintains, and the medical records demonstrate, that she provided

14

Williams a sick call appointment for April 11, 2013, to address his request for blood work and Williams was a "no show" for that appointment. *Exh. B to the Defendant's Special Report - Doc. No. 9-2 at 51.* Although Williams challenges the date of that appointment, the exhibit he provided to the court in support of his rebuttal forecloses that argument and establishes that his sick call appointment was, in fact, scheduled for April 11, 2013. *Exh. B to Plaintiff's Rebuttal - Doc. No. 16-2.* It is likewise clear that Nurse Phelps did not at any time thereafter prevent Williams from filing a medical request form seeking bloodwork nor did she prevent him from receiving treatment upon completion of a medical request form and subsequent appointment. With respect to the lack of treatment at sick call on July 15, 2013, the evidence demonstrates that Williams became impatient and left sick call before Nurse Phelps could evaluate his condition. The evidence further establishes that when Williams appeared later that same day at the Staton Health Care Unit, Nurse Phelps agreed to examine him but he refused to wait for her to complete her examination of another inmate. Williams concedes he left sick call but states he did so because he believed Nurse Phelps stepped outside to smoke a cigarette. However, the reason underlying Nurse Phelps's decision to step outside is not a material fact in this case. Furthermore, Williams does not dispute that he later voluntarily exited the health care unit when Nurse Phelps advised that he would have to wait while she completed her examination of another inmate.

As an initial matter, it is questionable whether Williams suffered a serious medical need on either date he alleges a denial of medical treatment. Nevertheless, even assuming

15

the existence of a serious medical need, there is no evidence that the defendant acted with deliberate indifference to that need.

The evidentiary materials filed by the defendant address the claims made by Williams alleging a lack of adequate medical treatment.  A thorough review of those documents demonstrates that the affidavits submitted by the defendant with respect to the material facts are corroborated by the contemporaneously compiled objective medical records.  The law is well settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."  *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)).

In her first affidavit, Nurse Phelps stated that she had "no recollection of seeing Mr. Williams on April 12, 2013," and advised that the medical records did not indicate she examined him on this date.  *Exh. A to the Defendant's Special Report - Doc. No. 9-1* at 3. However, in a supplemental affidavit, Nurse Phelps avers that after further reviewing Williams's rebuttal she recalled his attempt to receive medical treatment on April 12, 2013. Specifically, Nurse Phelps stated that

> . . . . [The Daily Appointment Schedule] Mr. Williams attached to his rebuttal was a Sick call schedule [published on April 10, 2013 containing inmate appointments] for April 11, 2013, and not April 12, 2013 [as alleged by the plaintiff].  Mr. Williams was in fact scheduled to be seen in Sick call on April 11, 2013.
> Mr. Williams in fact did not show up for Sick call on April 11, 2013 and his no show was documented by two witnesses.
> April 12, 2013 was a medical provider day.  This means that inmates only with appointments to see a physician are to be seen at the health care unit on that date.

I now recall Mr. Williams showing up at the health care unit on April 12, 2013.  However, due to the fact that he did not have an appointment to see the medical provider on that date he was told to return to the correctional dorms.

*Exh. A to the Defendant's Supplemental Special Report - Doc. No. 17-1* at 3-4 (paragraph numbering and parenthetical references to medical records omitted).

With respect to Williams's claims regarding July 15, 2013, Nurse Phelps states, in pertinent part, as follows:

> I specifically recall seeing Mr. Williams on July 15, 2013.  Also, the record reflects that I did in fact see Mr. Williams on that date. . . .
> On July 15, 2013, I wrote the following as a progress note with respect to Walter Williams:
>> 7/15/13 at 0945.  On 7/15/13 while doing sick call at Staton in B-Dorm, Nurse Likely became ill and needed to step outside for some fresh air.  I stepped outside to check on her.  At this time there was an inmate left to see for sick call.  The inmate, Walter Williams, was told he would be seen in just a moment.  At this time the inmate, Walter Williams, became upset and stated he had other things he needed to do and left sick call.  When arriving back at SHCU Captain Copeland and Walter Williams were at the health care unit.  Captain Copeland asked if I would see inmate [Williams].  I stated that I would.  Draper had a seg inmate that was brought over [for medical treatment] and inmate . . . Williams[] was going to have to be placed in the cage until [the] seg inmate left.  Inmate [Williams] got upset again and left SHCU.  Mr. Ellis and Captain Floyd were both notified of [the] situation.
> At no time on July 15, 2013 did I ever refuse to see, assess, or treat Mr. Williams.  Mr. Williams was upset at the delay of his assessment and left without being assessed.

*Exh. A to the Defendant's Special Report - Doc. No. 9-1* at 2-3 (paragraph numbering omitted); *Exh. A to the Defendant's Supplemental Special Report - Doc. No. 15* at 9-10 ("[On July 15, 2013,] [o]ther inmates were being seen and treated . . . and Williams had to

17

wait to be seen by me.  Williams became irritated having to wait for attention and chose to

leave [sick call and] the Health Care Unit before being seen. . . .   As a LPN, I do not make

appointments for inmates, such as Williams, to be seen by a physician at the Health Care

Unit. There are policies and procedures in place at the Staton Correctional Facility whereby

inmates make appointments to be seen by a physician.").

Nurse Phelps further states that:

> Mr. Williams, according to the medical records, has a history of refusing medical treatment from medical providers.
>
> The medical records reflect that on October 12, 2011, Williams was brought the health care unit by Captain Copeland.  Williams refused to go to the Chronic Care Clinic and refused all chronic care, medications and lab work.
>
> On January 10, 2012, Williams refused a physical examination including vital signs, blood sugar tests, labs and a screening EKG.
>
> On April 25, 2012, inmate [Williams] refused a chronic care visit and refused to sign a health care waiver.
>
> On October 26, 2012, Williams requested that his chronic care treatment be discontinued and refused further chronic care visits.
>
> Mr. Williams['] medical records reflect that on November 1, 2012 the nurse practitioner noted that Williams was not following medical advice regarding his health problems.
>
> On November 20, 2012, Williams refused to attend sick call.
>
> On January 7, 2013, the medical records reflect that Williams again refused a physical examination including vital signs, blood sugar tests, EKG screenings, eye exams and a dental examination.
>
> On April 11, 2013, Williams was a no show for sick call regarding blood work for cholesterol.
>
> On April 25, 2013, the records reflect that Williams refused a follow up for chest pain complaints and a medical doctor visit.  Williams refused an evaluation even though it was explained to him that he had heart irregularities that needed to be checked.
>
> On June 12, 2013, Williams was again a no show for sick call when he had requested to see the provider regarding his blood work.
>
> The medical records reveal that Mr. Williams has a history of refusing treatment and not following recommended medical treatment from the health care providers at the Staton Correctional Facility.

* * *

To my knowledge, Mr. Williams has always been provided with nursing care within the standard of care of nurses practicing nursing in the State of Alabama.

Mr. Williams has refused medical care on numerous occasions and has refused to follow advice from the nurses and physicians at the Staton Correctional Facility.

As a Licensed Practical Nurse, I cannot render treatment or make diagnosis of inmates/patients.

As a Licensed Practical Nurse, my responsibilities were to and are to take the vital signs of inmates and refer them to medical providers. . . .

*Exh. A to the Defendant's Special Report - Doc. No. 9-1* at 3-6 (paragraph numbering omitted).   A thorough review of the evidentiary materials submitted by the defendant demonstrates that the affidavits submitted by Nurse Phelps with respect to the material facts are corroborated by the objective medical records contemporaneously complied during the treatment process.

Under the circumstances of this case, the court concludes that the actions of the defendant did not violate Williams's constitutional rights.   Specifically, Nurse Phelps, when faced with the recalcitrant actions of Williams, did not act in a manner which was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  It is likewise clear that the allegations presented by Williams simply fail to establish deliberate indifference.  The evidence before the court demonstrates that Williams had continuous access to medical treatment from health care personnel at Staton.  Moreover, Williams received treatment each time he completed a medical request form, appeared at sick call or the health care unit for his scheduled appointment and remained until a health care provider had the

opportunity to evaluate him.  Williams also had access to the Chronic Care Clinic for treatment of his hypertension and dyslipidemia.  Based on well-settled law cited herein, the court concludes that the alleged lack of treatment on the two dates referenced by Williams did not constitute deliberate indifference.  Williams's self-serving statements of a lack of due care and deliberate indifference do not create a question of fact in the face of contradictory, contemporaneously created medical records.  *Whitehead*, 403 F. App'x at 403 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253-54 (11th Cir. 2013) (same).  In addition, Williams has failed to present any evidence which indicates defendant Phelps knew that the manner in which she addressed the situations at hand created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendant acted with deliberate indifference to any serious medical need experienced by Williams on the dates identified in the complaint.  Consequently, summary judgment is due to be granted in favor of the defendant.  *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of defendant.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before **May 4, 2016** the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 20th day of April, 2016.

/s/   Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE